FILED
Western District of Washington
at Seattle

JAN 22 2019

MARK L. HATCHER, CLERK
OF THE BANKRUPTCY COURT

**U S BANKRUPTCY COURT**
**WESTERN DISTRICT OF WASHINGTON**

The Honorable Timothy W. Dore
Chapter 7
US Bankruptcy Court
Courtroom 8106
700 Stewart St., 8th Floor
Seattle, WA 98101

| | |
|---|---|
| In Re<br><br>Daniel Kenneth Hughes,<br><br>    Debtor 1,<br><br>Brittany Michelle Hughes,<br><br>    Debtor 2 | Case No.: 18-14153-TWD<br><br>Chapter 7<br><br>MOTION<br>For Non-Discharge of Certain Debts Arising from Criminal Acts and Fraud Arising From Debtor's Operation of various businesses, Including Bradley Academy of Excellence |

Felon Debtor I is a felon for fraudulent acts that led to this bankruptcy. This is not an ordinary Chapter 7 filing by a young couple.

Therefore, COMES NOW, Michael L. Cantor ("Creditor") and moves the Court pursuant to 11 USC Section 727(a)(2) through (9) and 11 USC Section 523(a)(2), (4), or (6) for an Order that All or Certain of Debtors' Debts may not be Discharged, and Requests that the Court and/or Trustee Question the Debtors regarding their income and assets.

**I. RELEVANT FACTS**

Per the Plea Agreement and Direct Complaint, Debtor 1 committed fraudulent and criminal actions while he was the owner, principal, and acting in other

1

capacities, both with charter school named, among many other names, Bradley Academy of Excellence, and other businesses or entities he owned that did business with Bradley, for at least the time period of August 1, 2016 – January 30, 2018, and possibly even longer. See Attached Direct Complaint, Counts 1 and 2, page 2.

Debtor 1, Daniel K. Hughes, DOB: 12/14/1982, is an admitted felon who defrauded the State of Arizona and the US Government out of 100s of thousands, if not millions, of dollars by fraudulently inflating the enrollment figures of his Charter School Bradley Academy of Excellence. Maricopa County Superior Court, Case No. CR 2018-006754. He pled guilty to two felonies on or about November 7, 2018. The inflation of enrollment numbers is part of the basis of his owing Charter School Capital a listed $ 1.24 million. Debtor I Petition, Schedule E, page 3, No. 4.6.

The recitations, facts, and admissions in such attached plea agreement and Direct Complaint are incorporated herein as if set forth in full in this complaint. 1

Given that Arizona and the USA government and Debtor I's creditor gave so much money to Mr. Hughes and/or his school, it is hard to believe the scarcity of his income and assets in his Petition for Bankruptcy.

Mr. Hughes also created all/some of the businesses listed on Form 107,

---

1 Attached is a copy of the Plea Agreement of said Debtor 1, together with a copy of Direct Complaint of November 7, 2018, charging Debtor 1 with Conspiracy, a Class 2 felony, and Theft, a Class 2 felony. In such plea agreement of the same date, Debtor 1 pled guilty to both Conspiracy, a Class 2 felony, and Theft, a Class 2 felony.

It is believed that at this time, the Debtor 1 next court appearance is scheduled in Maricopa County Superior Court on January 15, 2019.

2

pages 9 - 10 of his Voluntary Petition for Individual Bankruptcy by excessively charging such charter school for goods and services as an additional way of obtaining income for himself and his companies at the expense of the Charter School and the students and staff, who ended up suffering when Mr. Hughes closed down the charter school in January, 29, 2018-- the middle of the 2018 school year-- which left students, teachers, and staff without a school to attend or work.

The charter school was short of funds because it had grossly overpaid companies owned by Mr. Hughes for expenses related to running the school. Because of the school's shortage of funds, Mr. Hughes tried to obtain enough funds from the State of Arizona and the US government to keep the school going by committing the crimes he recently pled guilty.

The charter school engaged in highly suspicious and negligent, and perhaps even fraudulent, financial transactions, leading up to the charter school's abrupt closure. These include hundreds of thousands of dollars in expense reimbursement payments to Mr. Daniel Hughes over a short period of time.

The defendant school engaged in highly improper and negligent, and perhaps fraudulent, practices that diverted or wasted school funds. Some of such funds and payments were made to Mr. Hughes himself, personally, and to his related company/companies. It is also believed that Mr. Hughes used school supplies and personnel for his personal benefit. It is believed that some of the funds went to Creemos Association, owned by Defendant convict Daniel Hughes to provide the charter school with educational operations, oversight and management services.

The charter school has announced publicly that "school operations and finances have been troubled over the last few years."

3

1 According to the Direct Complaint in CR 2018-006754-001, it stated that
2 Mr. Hughes, "agreed with one or more persons"...."will engage in conduct constituting
3 an offense included but not limited to Fraudulent Schemes and Artifices, a class 2
4 felony, and Theft...."

5 There were co-conspirators with Mr. Hughes. These may have included
6 employees and school officials. His wife, Mrs. Hughes, Debtor 2, does not explain what
7 her source of income used to be before she moved to Washington. Did she work for the
8 charter school or any of its subsidiaries or for Mr. Hughes?

9 Was Mrs. Hughes, Debtor 2, one of these co-conspirators?

10 The court, creditors, and trustee should closely examine the filing, Debtors
11 financial records, and Debtor 1 to be sure there are no other assets remaining, given all
12 the income he or his other numerous owned businesses received at one time.

13 **II. BASIS FOR RELIEF REQUESTED**

14 Some debts of the Debtors may not be dischargeable under 11 USC Section
15 727(a)(2) through (7), or be excepted from discharge under 11 USC Section 523 (a)(2), (4),
16 or (6), or the discharge of the debt should be denied under 11 USC Section 727 (a)(8) or
17 (9) because they may be due to criminal or fraudulent activities of Debtor 1, and possibly
18 Debtor 2.

19 **III. RELIEF REQUESTED**

20
21 1. It is requested that the trustee and the Court inquire of the Debtor 1 about his
22 criminal plea and the underlying activities that led to such plea to determine if any of the
23 debts that Debtor 1 is attempting to discharge in this case were a result of fraud and
24 therefore should not be discharged.

25 4
26

2. It is requested that the trustee and the Court inquire of the Debtor 2 about whether she was involved with Debtor 2 as a co-conspirator, employee of the school, or school official who had anything to do with Debtor 1 criminal activities to determine if any of the debts that Debtor 2 is attempting to discharge in this case were a result of fraud and therefore should not be discharged.

3. To the extent any debts are a result of the criminal activity and fraud on the State of Arizona, Arizona Department of Education, the US Department of Agriculture, and US Department of Education, and others, those debts should not be discharged, are not dischargeable, are excepted from discharge, and their discharge should be denied.

4. Requests that the Court and/or Trustee Inquire of Debtors where all the money they received from the various businesses went and what assets were purchased with such funds and what happened to those assets? It is believed that Debtor 1 received substantial six figure sums from the named charter school. Where did those funds go or what assets did the Debtors purchase?

5. Debtor claims they were put back into the charter school—as a charitable contribution (Debtor's Petition, Statement of Financial Affairs for Individuals, page 5, # 14 . If so, why did the school lack sufficient funds to stay open? If so, why did Debtor have to defraud the State of AZ and the US government by inflating their student enrollment numbers?

6. Obtain a complete copy of the Criminal File Maricopa County, AZ, Superior Court Case No. CR 2018-006754001 regarding Debtor 1 from the Clerk of the Maricopa County Superior Court or the Arizona Attorney General.

5

1  DATED this January __14____, 2019.    *Michael Cantor* (signature)
2                                         By:
                                           Michael L. Cantor
3                                          Creditor
                                           6501 E. Greenway Pkwy. # 103518
4                                          Scottsdale, AZ 85254
                                           Ph : 602.410.8276
5

6

7  **Certificate of Service**

8  On January 14, 2019, I served this Motion and Attachments
   By email to
9
   Trustee Nancy L. James at <u>njamestrustee@outlook.com</u>
10
   Debtor's Counsel Teri E. Johnson at <u>teri@terijohnsonlaw.com</u>
11
   On January 14, 2019, I served this Motion/Complaint on the following individuals by
12 mailing true copies and attachments in the US Mail with proper postage in a sealed –
   envelope, addressed as follows:
13
   Judge Timothy W. Dore at at 700 Stewart St, Courtroom 8106, Seattle, WA 98101
14
   Clerk of the Court, Mark Hatcher, at 700 Stewart St, Ste. 6301, Seattle, WA 98101
15
   US Trustee at 700 Stewart St, Ste. 5103, Seattle, WA 98101
16
   Trustee Nancy James at 15008 63rd Dr. SE, Snohomish, WA 98296
17
   And to Debtors' Attorney Teri E. Johnson at 19105 36th Ave. W, Ste. 209
18 Lynnwood, WA. 98036

19 And to Both Debtors:
   Daniel Kenneth Hughes at 23611 NE Valley St, # 219, Duvall, WA. 98019
20 Brittany Michelle Hughes at 23611 NE Valley St, # 219, Duvall, WA. 98019

21 **I declare under penalty of perjury under the laws of the USA that the foregoing
   certificate of service is true and correct.**
22
   *Michael Cantor* (signature)
23

24

25                                          6

26

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
IN AND FOR THE COUNTY OF MARICOPA

THE STATE OF ARIZONA, )
)
Plaintiff, )
)
vs. )
) CR 2018-006154-001
DANIEL K. HUGHES )
DOB: 12/14/1982 )
Defendant. ) PLEA AGREEMENT
)

The State of Arizona and the Defendant hereby agree to the following disposition of this case:

Plea: The Defendant agrees to plead **GUILTY** to:

**COUNT 1: CONSPIRACY, A CLASS 2 FELONY, in violation of A.R.S. §§13-1003, §13-2301, 13-301, 13-302, 13-303, 13-304, 13-701, 13-702 and 13-801 committed on or between August 1, 2016 and January 30, 2018.**

**COUNT 2: THEFT, A CLASS 2 FELONY, in violation of A.R.S. §§ 13-1802(a)(3), 13-1801, 13-301, 13-302, 13-303, 13-304, 13-701, 13-702 and 13-801 committed on or between August 1, 2016 and January 30, 2018.**

This is a **non-dangerous, non-repetitive** offense under the criminal code.

Terms: On the following understandings, terms and conditions:

1. **Count 1 and Count 2** each carry a presumptive sentence of **5 years**; a minimum sentence of **4 years** (**3 years** if trial court makes exceptional circumstances finding); and a maximum sentence of **10 years** (**12.5 years** if trial court makes exceptional circumstances finding). Probation is available. Restitution of economic loss to the victim and waiver of extradition for probation revocation procedures are required. The maximum fine that can be imposed is **$150,000.00 plus an 83% surcharge plus $20.00 pursuant to A.R.S. § 12-269 plus a $13.00 assessment pursuant to A.R.S. § 12-116.04, plus a $2.00 Victims Rights assessment A.R.S. § 12-116.09.** If the Defendant is sentenced to prison, the Defendant shall also be sentenced to serve a term of community supervision

equal to one-seventh of the prison term to be served consecutively to the actual period of imprisonment. If the Defendant fails to abide by the conditions of community supervision, the Defendant can be required to serve the remaining term of community supervision in prison. Within 30 days of being sentenced, pursuant to A.R.S. 13-610, the defendant shall provide a sufficient sample of blood or other bodily substance for deoxyribonucleic acid (DNA) testing and extraction to be used for law enforcement identification purposes and/or for use in a criminal prosecution and/or for use in a proceeding under title 36, chapter 37. Special conditions regarding the sentence imposed by statute (if any) are: **NONE.**

2. The parties stipulate to the following additional terms, subject to court approval at the time of sentencing as set forth in paragraph 7:

- **For Count 1, Defendant shall be sentenced to the Department of Corrections. For Count 2, Defendant placed on supervised probation with white collar terms following his physical release from the Department of Corrections. If Defendant rejects probation any sentence imposed shall run consecutive to the term imposed for Count 1.**
- **Defendant further agrees that he shall comply with the terms contained in Addendum A.**
- **Defendant shall pay restitution for all economic loss to all victims and/or victim's insurance companies and/or financial carriers, in the amount of $2,538,722 to the Arizona Department of Education, and agrees to further pay any additional restitution that may be discovered in an amount not to exceed $2,000,000, arising out of Office of the Arizona Attorney General report SIS-2018-0060 and any related supplements, even if a count is amended, modified or dismissed pursuant to this plea agreement, regardless of who caused the loss.**

3. The following charges are dismissed, or if not yet filed, shall not be brought against the Defendant by the Arizona Attorney General's Office: **The State agrees not to allege multiple dates of offenses.**

4. This agreement serves to amend the complaint, indictment, or information, to charge the offense to which the Defendant pleads, without the filing of any additional pleading. However, if the plea is rejected by the court or withdrawn by either party, or if the conviction is subsequently reversed, the original charges and any charges that are dismissed by reason of this plea agreement are automatically reinstated.

5. If the Defendant is charged with a felony, he hereby waives and gives up his rights to a preliminary hearing or other probable cause determination on the charges to which he pleads. The Defendant agrees that this agreement shall not be binding on the State should the Defendant be charged with or commit a crime between the time of this agreement and the time for sentencing in this cause; nor shall this agreement be binding on the State until the State confirms all representations made by the Defendant and her attorney, to-wit: **Defendant avows to having no prior felony convictions; he avows that he was not on probation, parole, community supervision or release at the time of the offense and he avows that he has no other pending matters in this or any other jurisdiction.** Although the State may have agreed to dismiss or not file sentencing enhancement allegations under Paragraph 3, Defendant is advised that any dismissed allegations may be considered in aggravation of any sentence permissible under the plea agreement. If the Defendant fails to appear for sentencing, the court may disregard the stipulated sentence and impose any lawful sentence which is the same as or exceeds the stipulated sentence in the plea agreement. In the event the court rejects the plea, or either the State or the Defendant withdraws the plea, the Defendant hereby waives and gives up his right to a preliminary hearing or other probable cause determination on the original charges.

6. Unless this plea is rejected by the court or withdrawn by either party, the Defendant hereby waives and gives up any and all motions, defenses, objections, or requests which he has made or raised, or could assert hereafter, to the court's entry of judgment against her and imposition of a sentence upon her consistent with this agreement. By entering this agreement, the Defendant further waives and gives up the right to appeal.

7. The parties hereto fully and completely understand and agree that by entering into a plea agreement, the defendant consents to judicial fact finding by preponderance of the evidence as to any aspect or enhancement of sentence and that any sentence either stipulated to or recommended herein in paragraph two is not binding on the court. In making the sentencing determination, the court is not bound by the rules of evidence. If after accepting this plea the court concludes that any of the plea agreement's provisions regarding the sentence or the term and conditions of probation are inappropriate, it can reject the plea. If the court decides to reject the plea agreement provisions regarding sentencing, it must give both the state and the Defendant an opportunity to withdraw from the plea agreement. In case this plea agreement is withdrawn, all original charges

will automatically be reinstated. The Defendant in such case waives and gives up his right to a probable cause determination on the original charges.

8. If the court decides to reject the plea agreement provisions regarding sentencing and neither the State nor the Defendant elects to withdraw the plea agreement, then any sentence either stipulated to or recommended herein in paragraph 2 is not binding upon the court, and the court is bound only by the sentencing limits set forth in paragraph 1 and the applicable statutes.

9. This plea agreement does not in any way compromise, or provide any protection or defense with regard to, any civil action, whether by or on behalf of a victim or any government entity, and whether previously or later filed, including but not limited to an action pursuant to A.R.S. Title 13, Chapter 23 or § 13-4301-4315; nor does it abrogate or limit the provisions of A.R.S. § 13-2314(H) or A.R.S. § 13-4310(C), or in any other way adversely affect the State in any current or future forfeiture proceeding or other civil action pursuant to A.R.S. § 13-2314, § 13-4301-4315, or § 32-1993, if applicable.

10. I understand that if I am not a citizen of the United States that my decision to go to trial or enter into a plea agreement may have immigration consequences. Specifically, I understand that pleading guilty or no contest to a crime may affect my immigration status. Admitting guilt may result in deportation even if the charge is later dismissed. My plea or admission of guilt could result in my deportation or removal, could prevent me from ever being able to get legal status in the United States, or could prevent me from becoming a United States citizen. I understand that I am not required to disclose my legal status in the United States to the court.

11. I have read and understand all of the provisions, on all of the pages, of this agreement. I have discussed the case and my constitutional rights with my lawyer. My lawyer has explained the nature of the charge(s) and the elements of the crime(s) to which I am pleading. I understand that by pleading <u>**GUILTY**</u> I will be waiving and giving up my right to a determination of probable cause, to a trial by jury to determine guilt and to determine any fact used to impose a sentence within the range stated above in paragraph one, to confront, cross-examine, compel the attendance of witnesses, to present evidence in my behalf, my right to remain silent, my privilege against self-incrimination, presumption of innocence and right to appeal. I agree to enter my plea as indicated above on the terms and conditions set forth herein. I fully understand that if, as part of this plea agreement, I am granted probation by the court, the terms and conditions thereof

are subject to modification at any time during the period of probation. I understand that if I violate any of the written conditions of my probation, my probation may be terminated and I can be sentenced to any term or terms stated above in paragraph one, without limitation.

I have personally and voluntarily placed my initials in each of the above boxes and signed the signature line below to indicate I read and approved all of the previous paragraphs in this agreement, both individually and as a total binding agreement.

Defendant: _____ Date: 11/7/2018
DANIEL K. HUGHES

I have discussed this case with my client in detail and advised him of his constitutional rights and all possible defenses. I have also explained the nature of the charge(s) and the elements of the crime(s). I believe that the plea and disposition set forth herein are appropriate under the facts of this case. I concur in the entry of the plea as indicated above and on the terms and conditions set forth herein.

Defense Counsel: _____ Date: 11/07/2018
KURT ALTMAN

Defense Counsel: _____ Date: 11/07/2018
JIM BELANGER

I have reviewed this matter and concur that the plea and disposition set forth herein are appropriate and are in the interests of justice.

_____ Date: 11/7/18
JORDYN RAIMONDO
Assistant Attorney General

MARK BRNOVICH
Attorney General
Firm Bar No. 14000

MARY HARRISS
State Bar No. 014462
JORDYN RAIMONDO
State Bar No. 028030
Assistant Attorneys General
2005 North Central Avenue
Phoenix, Arizona 85004-1592
Telephone 602-542-3881
crmfraud@azag.gov

Attorneys for Plaintiff

SIS-2018-0060 – Office of the Attorney General
Agua Fria Justice Court

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## COUNTY OF MARICOPA

| | |
|---|---|
| STATE OF ARIZONA, <br><br> Plaintiff, <br><br> v. <br><br> DANIEL K. HUGHES, <br><br> Defendant. | Case No: 2018-006754-001 <br><br> **DIRECT COMPLAINT** <br><br> CHARGING VIOLATIONS OF: <br><br> **COUNT 1: CONSPIRACY,** a Class 2 Felony in violation of A.R.S. § 13-1003 <br><br> **COUNT 2: THEFT,** a Class 2 Felony in violation of A.R.S. § 13-1802 |

The complainant herein personally appears and, being duly sworn, complains on information and belief against **DANIEL K. HUGHES**, charging that in Maricopa County, Arizona:

## COUNT 1:
## CONSPIRACY

On or between August 1, 2016 and January 30, 2018, **DANIEL K. HUGHES**, with intent to promote or aid the commission of an offense, agreed with one or more persons that at least one of them or another person will engage in conduct constituting an offense included but not limited to Fraudulent Schemes and Artifices, a class 2 felony, and Theft, as a class 2 felony, and one of the parties committed an overt act in furtherance of an offense, included but not limited to Fraudulent Schemes and Artifices, a class 2 felony, and Theft, as a class 2 felony, in violation of A.R.S. §§ 13-1003, 13-301, 13-302, 13-303, 13-304, 13-305, 13-306, 13-701, 13-702 and 13-801.

To Wit: **DANIEL K. HUGHES** agreed with other school officials and employees of the Bradley Academy of Excellence to create false student profiles and student information and to submit said profiles and information to the State of Arizona/Arizona Department of Education, the United States Department of Agriculture, and the United States Department of Education to fraudulently increase Bradley Academy funding.

## COUNT 2:
## THEFT

On or between August 1, 2016 and January 30, 2018, **DANIEL K. HUGHES**, without lawful authority, knowingly obtained services or property of another by means of any material misrepresentation with the intent to deprive the other person of such property or services in an amount of $25,000 or more, in violation of A.R.S. §§ 13-

1802(A)(3), 13-1801, 13-301, 13-302, 13-303, 13-304, 13-305, 13-306, 13-701, 13-702 and 13-801.

MARK BRNOVICH
ATTORNEY GENERAL

_____
JORDYN RAIMONDO
Assistant Attorney General
Criminal Division

_____ AGENCY: AGO- Fraud & Special Prosecution
Jordyn Raimondo, COMPLAINANT

SUBSCRIBED AND SWORN upon information and belief this 7TH day of NOVEMBER, 2018.

#7286528

3

# Former Director of Goodyear Charter School Pleads Guilty to Conspiracy and Theft

**PHOENIX** – Attorney General Mark Brnovich announced Daniel K. Hughes, Chairman and Director of the Bradley Academy of Excellence, pleaded guilty to a $2.5 million conspiracy involving the use of false students.

During the 2016-2017 and 2017-2018 academic school years, Bradley Academy of Excellence fraudulently over-reported the number of students enrolled in the school to receive additional funding. School officials and employees conspired together to create fake students that were reported to the State of Arizona/Arizona Department of Education, the U.S. Department of Agriculture, and the U.S. Department of Education. The school abruptly closed its doors in December 2017 before a scheduled audit by the Arizona Department of Education. The audit revealed during the 2017-2018 academic year, Bradley Academy reported 528 enrolled students. However, 453 of those students were fraudulent. For the 2016-2017 academic year, Bradley Academy reported 652 enrolled students. However, 191 were fraudulent. This resulted in the school receiving approximately $2.2 million in overfunding from the State of Arizona, $91,000 in overfunding from the U.S. Department of Education, and $230,000 in overfunding from the U.S. Department of Agriculture for meals.

On Wednesday morning, Hughes pleaded guilty to one count of Conspiracy, a class 2 felony, and faces a sentence range in the Department of Corrections between 3 and 12.5 years. Hughes also pleaded guilty to one count of Theft, a class 2 felony, and will be placed on probation following his release from prison.

Copy of the direct complaint (/sites/default/files/docs/press-releases/2018/complaints/Hughes_Direct_Complaint.pdf).

Copy of the plea agreement (/sites/default/files/docs/press-releases/2018/plea-agreements/Hughes_Doc_Nov_07_2018_1055.pdf).

A status conference for sentencing is set for January 15, 2019.

The case is being prosecuted by Assistant Attorneys General Mary Harriss and Jordyn Raimondo.

## PRESS RELEASE ARCHIVE

201811 (/press-releases/archive/201811) (5)
201810 (/press-releases/archive/201810) (18)
201809 (/press-releases/archive/201809) (13)
201808 (/press-releases/archive/201808) (17)
201807 (/press-releases/archive/201807) (13)
201806 (/press-releases/archive/201806) (13)
201805 (/press-releases/archive/201805) (17)
201804 (/press-releases/archive/201804) (11)
201803 (/press-releases/archive/201803) (16)
201802 (/press-releases/archive/201802) (16)
201801 (/press-releases/archive/201801) (18)

›› (/press-release/former-director-goodyear-charter-school-pleads-guilty-conspiracy-and-theft?page=1)

## PRESS CONTACT

Katie Conner
*Director of Media Relations*

2005 N Central Ave.
Phoenix, AZ 85004
(602) 542-8019

**Katie.Conner@azag.gov (mailto:Katie.Conner@azag.gov)**

2005 N Central Avenue, Phoenix, AZ 85004 | Email: **Contact Us** (/contact-us) | Phone: (602) 542-5025
**Privacy Statement (/privacy)**